UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
                                                            :
IN THE MATTER OF AN APPLICATION FOR                         :    25 Misc. 22 (LGS)
AN EX PARTE ORDER TO AUTHORIZE                              :
DISCLOSURE OF TAX RETURNS AND TAX                           :    **OPINION & ORDER**
RETURN INFORMATION                                          :
                                                            :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge, sitting by designation:

  On October 2, 2025, the United States Attorney's Office for the Northern District of New York (the "Government") applied for a court order directing the Internal Revenue Service to disclose tax return information (the "Application"). John A. Sarcone III authorized the Application as Acting United States Attorney for the Northern District of New York ("NDNY"). This request invokes 26 U.S.C. § 6103(i)(1)(A)(i), a statute that permits such disclosure only under narrow, specified conditions. One critical condition is that only certain designated officials are authorized to make the request -- the Attorney General, the Deputy Attorney General, the Associate Attorney General, Assistant Attorneys General, United States Attorneys and other officials not relevant here. 26 U.S.C. § 6103(i)(1)(B).

  The Application is denied because Mr. Sarcone was not lawfully serving as Acting United States Attorney and therefore lacked authority to authorize the Application. The Government's request to seal this matter is also denied. The substantial public interests implicated by questions of the proper scope of Executive power and the statutory limits on access to tax information warrant public disclosure. While this case, and with it, this decision, are now unsealed, the underlying Application and its supporting materials will remain under seal, at least while the investigation remains active, to protect law enforcement interests and the

1

taxpayer's privacy interests, including the confidentiality of the taxpayer's identity and other sensitive information disclosed in the Application.

### I. BACKGROUND

#### A. Application for Tax Return Disclosure

On October 2, 2025, the Government filed the Application, which seeks an ex parte (i.e., secret) order directing the IRS to disclose tax returns and tax return information for a limited liability company to Mr. Sarcone and other Government officials. The Application makes three claims in support of the request under 26 U.S.C. § 6103(i)(1)(A)(i). First, it alleges reasonable cause to believe that certain criminal acts have been committed. Second, it claims the tax return information may be relevant to those crimes. Third, it states that the information cannot reasonably be obtained from any other source.

The Application states that Mr. Sarcone "authorized" the request in his capacity as "Acting United States Attorney for the Northern District of New York." The Application further states that, in addition to Mr. Sarcone, Assistant U.S. Attorney Michael Perry, a named Internal Revenue Service Criminal Investigation Special Agent and a named Homeland Security Investigations Special Agent are directly involved in the investigation. Mr. Sarcone signed the Application. Assistant U.S. Attorney Perry signed the verification accompanying the Application, attesting to its accuracy. The Government also filed a proposed ex parte order and a proposed sealing order with the Application.[1]

---

[1] Justice Manual § 9-13.900 states that, as a matter of Department policy, an application for returns and return information under § 6103(i) should be filed under seal, with a contemporaneous motion requesting that both the application and any resulting order be sealed. *See* Justice Manual § 9-13.900, https://www.justice.gov/jm/jm-9-13000-obtaining-evidence#9-13.900 [https://perma.cc/U3X4-HUWH]. No such motion to seal accompanied the Application here, nor did the Application explain the Government's basis for sealing.

2

On October 17, 2025, Second Circuit Chief Judge Debra Livingston designated the undersigned judge to consider the Application. The NDNY District Court Judges recused themselves from deciding the Application, having declined to exercise their authority to appoint a U.S. Attorney when Mr. Sarcone's 120-day term as Interim U.S. Attorney expired.

### B. Challenge to Mr. Sarcone's Appointment

An unrelated action recently challenged the lawfulness of Mr. Sarcone's service as Acting U.S. Attorney. On August 5, 2025, under his purported authority as Acting U.S. Attorney, Mr. Sarcone personally directed two grand jury subpoenas to the Office of the New York State Attorney General. On August 19, 2025, the Office of the New York State Attorney General moved to quash the subpoenas on the ground, among others, that Mr. Sarcone's appointment was unlawful. On January 8, 2026, the undersigned granted the motion to quash, holding that Mr. Sarcone was unlawfully serving as Acting U.S. Attorney for the NDNY. *See In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, 25 Misc. 19 (N.D.N.Y. Jan. 8, 2026) ("*NYOAG Subpoenas Opinion*").

## II. DISCUSSION

### A. The Application is Unauthorized

Congress adopted 26 U.S.C. § 6103(i)(1) as a narrow exception to the strict confidentiality of tax information. The statute allows disclosure of federal tax returns and tax return information for non-tax criminal investigations by court order. But only the Attorney General, Deputy Attorney General, Associate Attorney General, Assistant Attorneys General, United States Attorneys and other expressly identified officers may request such disclosure. 26 U.S.C. § 6103(i)(1)(A), (B). When he authorized the Application, Mr. Sarcone was not lawfully

3

serving as Acting United States Attorney nor was he acting in any of the other positions identified by statute.  The Application is therefore denied.

### 1. Mr. Sarcone Is Unlawfully Serving as Acting U.S. Attorney

For the reasons set out in the Court's prior opinion in *In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, No. 25 Misc. 19 (N.D.N.Y. Jan. 8, 2026), Mr. Sarcone was and is unlawfully serving as Acting U.S. Attorney for the NDNY.  In particular, the Attorney General did not designate Mr. Sarcone as First Assistant until July 2025, months after the U.S. Attorney vacancy first arose.  The Federal Vacancies Reform Act ("FVRA") automatically designates as Acting U.S. Attorney only the First Assistant in place when the vacancy arises, and Mr. Sarcone was not the First Assistant at that time.  Nor may the Attorney General use her general delegation powers to confer the full authority of a U.S. Attorney on Mr. Sarcone outside the FVRA and 28 U.S.C. § 546's exclusive, time-limited mechanisms for filling U.S. Attorney vacancies.

### 2. Mr. Sarcone Cannot Authorize the Application

Because Mr. Sarcone was not lawfully serving as Acting U.S. Attorney for NDNY, the Application fails to satisfy § 6103(i)(1)'s statutory requirements and provides no basis to permit disclosure of federal tax return information.  The Attorney General's designation of Mr. Sarcone as a Special Attorney does not change this analysis.

#### a. Section 6103(i)(1)'s Authorization Requirement

Section 6103(i)(1) permits disclosure of federal tax returns and return information for non-tax criminal investigations only by court order, and only if the Government meets the statute's threshold requirements.  One such requirement is that one of a few high ranking Government officials must authorize the application.  Individuals with that authority include the

4

Attorney General, Deputy Attorney General, Associate Attorney General, Assistant Attorneys General, and United States Attorneys. 26 U.S.C. § 6103(i)(1)(A), (B).

This authorization requirement is central to § 6103's overall structure. Tax return information is confidential by default, and disclosure is permitted only through limited exceptions. *See Aronson v. I.R.S.*, 973 F.2d 962, 964 (1st Cir. 1992) (describing the provision's baseline rule of confidentiality and its "narrowly drawn exceptions"). Congress adopted the statute to protect taxpayer privacy, as well as encourage continued compliance with the tax system. *Id*. at 966. Courts accordingly have emphasized that § 6103 was "designed to hermetically seal tax return information in all but the rarest of circumstances." *United States v. Weed*, 775 F. Supp. 3d 520, 531 (D. Mass. 2025); *accord In re Taxpayer Return Info.*, 204 F. Supp. 3d 933, 937 (E.D. Ky. 2016) (explaining that § 6103(i) allows access to tax return information only "in the limited circumstances Congress has deemed appropriate"); *United States v. Praetorius*, 451 F. Supp. 371, 372-73 (E.D.N.Y. 1978) (noting that Congress intended tax return information to have "essentially the same degree of privacy as . . . private papers maintained in the home"). Here, Mr. Sarcone was not lawfully serving as Acting U.S. Attorney and therefore could not authorize the Application in that capacity.

### b. Statutory Exclusivity Bars Delegation

Beyond the title of Acting U.S. Attorney, Mr. Sarcone lacks any other basis to claim authority to make the Application. The Government cannot avoid § 6103(i)(1)'s statutory requirements by invoking general vesting or delegation statutes. This conclusion flows directly from *United States v. Giordano*, 416 U.S. 505 (1974). There, the Supreme Court established a straightforward principle: when Congress specifies which officials may exercise a particular statutory power, Congress intended that specification to be exclusive. The statute at issue in

5

*Giordano* involved wiretapping and authorized only "the Attorney General, or any Assistant Attorney General specially designated by the Attorney General" to approve wiretaps. *See* 18 U.S.C. § 2516(1); *Giordano*, 416 U.S. at 512-13. The Supreme Court rejected the Government's argument that general delegation statutes permit other officials to approve wiretap applications. *See Giordano*, 416 U.S. at 513. The Court held that Congress "intended to limit the power to authorize wiretap applications to the Attorney General himself and to any Assistant Attorney General he might designate," and that general delegation statutes could not be used to evade that limitation. *Id.* at 514, 523, 527-29. The requirement that an enumerated officer approve a wiretap application was not a mere technicality; the requirement "directly and substantially implement[ed] . . . congressional intention," and the requirement's violation compelled suppression. *Id*. at 527-29.

Section 6103(i)(1) reflects a similar congressional intent and dictates a similar result. The statute grants the government a powerful statutory tool -- the ability to pierce tax-return confidentiality for use in criminal investigations -- and conditions that power on the authorization of specific political appointees. *See* 26 U.S.C. § 6103(i)(1)(A), (B). Construing § 6103(i)(1) to permit the Attorney General to delegate this authority to anyone would do precisely what *Giordano* forbids. It would improperly substitute Congress's intended gatekeepers with whomever the Executive Branch, through the Attorney General, chooses. "When Congress chooses to speak with such specificity," requiring that a § 6103(i)(1)(B) application be made by "the Attorney General, the Deputy Attorney General, or an Assistant Attorney General," or other specifically identified officers, "courts must heed its language." *United States v. Mangan*, 575 F.2d 32, 39 (2d Cir. 1978) (Friendly, J.).

6

The Government's own litigation positions confirm this conclusion.  Of particular significance, during oral argument in parallel litigation challenging Mr. Sarcone's appointment, the Government conceded that under Mr. Sarcone's Special Attorney appointment, he "did not have the authority to do those things that are reserved expressly by Congress for . . . US Attorney[s]." [2]  Tr. of Oral Arg. at 28:8-15, 30:22-25, *In re Grand Jury Subpoena to the Office of the New York State Attorney General*, No. 25 Misc. 19 (N.D.N.Y. argued Dec. 4, 2025); *NYOAG Subpoenas Opinion*, slip. op. at 18-19.  Similarly, in the New Jersey case challenging Alina Habba as Acting U.S. Attorney, the Government identified 26 U.S.C. § 6103(i)(1)(B) among the "relatively few exclusive functions" that statutes assign to U.S. Attorneys.  *See United States v. Giraud*, 795 F. Supp. 3d 560, 594 n.209 (D.N.J. 2025), *aff'd*, 160 F.4th 390 (3d Cir. 2025).  The Government's representations undercut any argument that general delegation statutes can confer § 6103(i)(1) authority on an improperly appointed official.  Accordingly, the Application here was not made by an official empowered to do so under § 6103(i)(1) and must be denied.

### B. Public Access to This Proceeding

#### 1. Common Law Right of Public Access

Requests under § 6103(i)(1) are by their nature ex parte -- submitted without notice to the taxpayer or other interested parties -- but courts still must decide whether such applications remain under seal.  "The common law right of public access to judicial documents is firmly

---

[2] The Government made a similar admission in its written submission in the same parallel litigation.  The Government defended Mr. Sarcone's appointment citing *United States v. Weyhrauch*, 544 F.3d 969, 975 (9th Cir. 2008), for the proposition that "section 515 allows the Attorney General to delegate authority otherwise restricted to United States Attorneys to certain others, but by itself does not vest such individuals with the powers exclusive to the United States Attorney."  Government's Omnibus Opp'n to Mot. to Quash and Mot. to Unseal, at 37, *In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, 25 Misc. 19 (N.D.N.Y. Nov. 3, 2025).

7

rooted in our nation's history . . . [but] is not absolute." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006); *accord Giuffre v. Maxwell*, 146 F.4th 165, 175-177 (2d Cir. 2025) (per curiam). Courts apply a three-part inquiry to determine whether, and to what extent, matters should remain under seal. *Giuffre*, 146 F.4th at 175-177. First, courts determine whether the relevant material is a "judicial document," meaning that the document is "relevant to the performance of the judicial function and useful in . . . a federal court's exercise of power under Article III of the Constitution." *Id.* at 176. If so, courts next determine the weight of the presumption of public access based on "the role of the material at issue in the exercise of Article III judicial power" and the "value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119. Finally, courts balance that presumption against any countervailing interests, including "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id*. at 120.

    **2. Sealing Determination**

The Government did not formally move to seal this proceeding, but the proposed sealing order that accompanied the Application is construed as such a motion. That motion is denied. The authority of Mr. Sarcone as Acting U.S. Attorney is a matter of substantial public interest that justifies unsealing this decision and this proceeding, although the Application itself and its accompanying exhibits will remain under seal.

The Application functions as the operative filing in this matter and therefore qualifies as a judicial document. *See Giuffre*, 146 F.4th at 176. Public access to judicial documents is "essential" to democratic accountability and public confidence in the judiciary. *Id.* at 175. Meaningful "professional and public monitoring" of the courts depends on access to the

8

materials on which courts rely in exercising their authority. *Id*. Because the Application is a judicial document, it begins with a strong presumption of public access. *Id.* at 176.

Here, the presumption of public access is particularly strong given the nature of the Application and the issue presented. Whether the taxpayer's information is released for a criminal investigation depends on whether a properly empowered official under § 6103(i)(1) has authorized the Application. That threshold question is resolved by reference to a prior decision holding that Mr. Sarcone was unlawfully serving as Acting U.S. Attorney. Because this ruling concerns whether the Government may pierce the confidentiality of sensitive tax information -- and because it implicates compliance with statutory limits on the exercise of U.S. Attorney powers -- the value of public access to this decision is substantial. *Lugosch*, 435 F.3d at 119. These are strong reasons that support public disclosure of this matter.

Despite the strong presumption of public access, this proceeding also implicates significant countervailing interests. "The *ex parte* application process . . . facilitates the important law enforcement interest of allowing the Government to pursue investigations without providing notice to potential or indicted defendants." *United States v. Tillman*, No. 07 Cr. 1209, 2009 WL 976818, at *3 (S.D.N.Y. Apr. 6, 2009). That interest intensifies when the relevant investigation remains ongoing. *See Lugosch*, 435 F.3d at 120 (discussing the "danger of impairing law enforcement"). Accordingly, courts in this Circuit unseal applications under § 6103(i)(1) after completion of the underlying investigation or trial. *See Tillman*, 2009 WL 976818, at *3-4 (unsealing government's application under § 6103(i)(1) and the court's order after trial). Evaluating sealing in the context of an active investigation therefore requires a more tailored approach.

9

Sealing is also warranted to protect the taxpayer's privacy interests. An application under § 6103(i)(1) typically identifies the taxpayer and describes the return information sought and the investigative basis for obtaining it. Disclosure would therefore reveal that a particular taxpayer is under criminal investigation and could expose sensitive information. Those harms are most acute while the investigation is ongoing but persist even after the investigation concludes -- especially if it ends without criminal charges.

Unsealing this proceeding and this decision, while maintaining the Application itself under seal, strikes the appropriate balance. This approach allows public access to information about the safeguards Congress embedded in the FVRA, § 546 and § 6103(i)(1), and the consequences of circumventing them -- information of substantial value to those monitoring the federal courts. *See Lugosch*, 435 F.3d at 119. Simultaneously, this result protects law enforcement interests by preserving the confidentiality of the Application and the investigative details it contains.

### III. CONCLUSION

For the foregoing reasons, the Application by Mr. Sarcone to release tax information for a criminal investigation is **DENIED**. Mr. Sarcone is not lawfully serving as Acting U.S. Attorney and therefore cannot authorize the Application.

The implied motion to keep this proceeding under seal is likewise **DENIED**, but the Application and its Exhibits shall remain under seal.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 1 and unseal this matter, with the exception of Dkt. No. 1.

Dated: January 8, 2026
      New York, New York

_____<br>
LORNA G. SCHOFIELD<br>
UNITED STATES DISTRICT JUDGE

10